IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  5:13cr13/MW/EMT
                                                   5:18cv63/MW/EMT

TRACY L. COLLIER
_____/

## **REPORT AND RECOMMENDATION**

This matter is before the court on Defendant Tracy L. Collier's "Motion Under
28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal
Custody" and memorandum in support (ECF Nos. 350, 358), as well as the
Government's response in opposition (ECF No. 361).[1]  The case was referred to
the undersigned magistrate judge for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.   *See* N.D. Fla.
Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review
of the record and the arguments presented, the undersigned finds Collier has not
raised any issue requiring an evidentiary hearing and that the § 2255 motion should
be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

---

[1] Collier did not file a reply despite moving for, and receiving, a sixty-day extension of time within
which to do so (ECF Nos. 369–70).

## PROCEDURAL HISTORY and BACKGROUND

On November 19, 2013, a federal grand jury returned a forty-five count superseding indictment against Versiah M. Taylor, Tracy L. Collier, and Joshca Michelle Hall (ECF No. 48).    Count One charged that between on or about September 9, 2011, and August 15, 2012, the three defendants conspired together and with others to defraud the United States by filing false federal income tax returns claiming refunds in excess of $503,273.00 in violation of 18 U.S.C. § 287.    Counts Two through Eight charged Collier (and Taylor) with filing false claims in violation of 18 U.S.C. §§ 287 and 2.    Counts Seventeen through Twenty-Three charged Collier (and Taylor) with wire fraud and aiding or abetting in violation of 18 U.S.C. §§ 1343 and 2.    Counts Thirty-Two through Thirty-Eight charged Collier (and Taylor) with aggravated identity theft and aiding and abetting in violation of 18 U.S.C. § 1028A(a)(1) and 2.[2]

Codefendant Hall pleaded guilty to Count One, and Taylor and Collier proceeded to trial.[3]    The jury trial, which began on January 27, 2014, and ended on

---

[2] Taylor alone was charged in Counts Nine through Sixteen, Twenty-Four through Thirty-One, and Thirty-Nine though Forty-Five.

[3] Appointed counsel Rachel Seaton-Virga represented Collier throughout the proceedings, except for Collier's first appeal, when he was represented by Sonya Margaret Rudenstine (*see* ECF No. 229).

Case Nos.: 5:13cr13/MW/EMT; 5:18cv63/MW/EMT

February 5, 2014, resulted in guilty verdicts on all counts of the superseding indictment (ECF No. 253 at 110–16).

The Second Final Presentence Investigation Report ("PSR")[4] for Collier reflected a total offense level of 27[5] and a criminal history category of V, yielding a guidelines sentencing range of 120 to 150 months for Counts 1, 2–8, and 17–23 (ECF No. 182, PSR ¶¶ 36–46, 104). The PSR noted that the statutory two-year minimum sentences for the identity theft convictions on Counts 32 through 38 were required to run consecutively to the sentences on the other counts, although the court had discretion to run the two-year sentences concurrently, in whole or in part, with each other (*id.*, PSR ¶¶ 47, 103). Last, the PSR noted that the total sentence was required to run consecutively to the undischarged term of imprisonment Collier was serving at the time he committed the offense conduct (*id.*, PSR, ¶ 104).[6]

---

[4] This PSR was docketed on June 2, 2014. A revised PSR was prepared after Collier's case was appealed and remanded. The revised PSR, docketed on March 3, 2017, contains substantial revisions and additions; it also bears the title "Second Final Presentence Investigation Report" (ECF No. 320).

[5] Collier's total offense level included a base offense level of 7, a 14-level adjustment for the amount of loss, a 2-level adjustment for sophisticated means, and a 4-level adjustment for the number of victims.

[6] Collier was in state prison serving a twenty-five year sentence (for escaping from the Bay County Jail in June 2001, while awaiting sentencing on another charge), at the time he committed the conduct of which he was convicted in the instant case (*see* ECF No. 182, PSR ¶¶ 62, 63). According to information available on the Florida Department of Correction's website, he has a

On June 4, 2014, the court sentenced Collier to a total term of 164 months of imprisonment, followed by three years of supervised release (ECF Nos. 194, 195, 254).    The court also ordered him to pay $107,422.00 in restitution (*id.*).    Collier appealed both the conviction and the sentence.    The Eleventh Circuit issued its opinion on June 21, 2016, affirming the conviction but remanding the case for re-sentencing, finding the district court did not make individualized findings about the number of victims attributable to Collier or analyze Collier's role in the offense (ECF No. 288).

On remand, a revised PSR was prepared using the November 1, 2016, Guidelines Manual, which provided a less onerous guidelines range than the manual in effect at the time of Collier's original sentencing (*see* ECF No. 320, PSR ¶ 34). Using the same information as in the original PSR, Collier's total offense level became 23[7] while his criminal history category remained V (*id.* ¶¶ 36–46, 66).    The revised guidelines range was 84 to 105 months (*id.* at ¶104), without considering the

---

release date of September 1, 2040, when he will begin serving the instant federal sentence.  *See* http://www.dc.state.fl.us/offenderSearch/detail.aspx?Page=Detail&DCNumber=880017&TypeSearch=AI (last visited June 25, 2020).

[7] Collier's total offense level included a base offense level of 7, a 2-level adjustment for sophisticated means, a 12-level adjustment for the amount of loss, and a 2-level adjustment for the number of victims.   The latter two adjustments each reflected a 2-level decrease in severity from the 2013 guidelines, and his total offense level, based on identical information, was 4 levels less.

minimum consecutive sentence of two years required for the identity theft convictions on Counts 32 through 38 (*id*. PSR ¶¶ 47, 103).

At the resentencing hearing held on March 6, 2017, the court sustained defense counsel's objections regarding the number of victims and Collier's role in the offense (ECF No. 338 at 54).    Collier's offense level thus was further reduced—to 19—with an applicable guidelines range of 57 to 71 months, to be followed by a consecutive 24-month sentence (*id.*).    The court sentenced Collier to a total term of 84 months (ECF Nos. 323, 324, 338).    Collier appealed the sentence, and counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).    The Eleventh Circuit affirmed (ECF No. 347).    Collier then filed the instant motion, raising seven claims of ineffective assistance of trial counsel and two claims of ineffective assistance of appellate counsel.

## STATEMENT OF FACTS[8]

From September 2011 through August 2012, Collier and Taylor participated in a prison tax fraud scam.    Collier, then an inmate at Okaloosa County Correctional Institution, stole other inmates' personal identifiable information

---

[8] The Statement of Facts is essentially a verbatim recitation of the facts set forth in the Eleventh Circuit's opinion on direct appeal (ECF No. 288).

Case Nos.: 5:13cr13/MW/EMT; 5:18cv63/MW/EMT

("PII")—names, birth dates, and social security numbers—and mailed it to Taylor, who was not incarcerated at the time.[9]    The defendants went to some lengths to conceal their activities.    For instance, instead of addressing letters to Taylor, Collier often used one of Taylor's aliases.    And to sneak the stolen PII past prison mail screeners, Collier camouflaged it in phony legal case citations or phone numbers. When Taylor received Collier's letters, he and his girlfriend, co-defendant Joshca Hall, decoded the citations and used the stolen PII to electronically file fraudulent tax returns and obtain tax refunds to which they were not entitled.    Collier and Hall arranged for the refunds to be directly deposited onto prepaid debit cards to which they had access and from which they would withdraw the funds.

Collier was not Taylor's only source of PII.    Hall testified at trial, for example, that she and Taylor formed a sham legal research company called Pro Se Networking Assistance, LLC, and that inmates seeking the company's services sent Taylor forms containing PII, which Taylor then used to file fraudulent tax returns. Hall also testified that she and Taylor marketed to inmates the services of another

---

[9] Collier and Taylor were step-brothers during the time Collier's mother was married to Taylor's father (ECF No. 182, PSR ¶ 90; *see also* ECF No. 338 at 58 (Collier refers to Taylor as his "youngest brother")).

phony company, called Panhandle Express, and obtained additional PII from inmates who sought its services.    Taylor used that PII to file still more fraudulent returns.

In its entirety, the scheme involved the filing of at least seventy-six fraudulent tax returns collectively claiming more than a half million dollars in refunds.    The IRS issued $107,422.00 in refunds before its agents discovered the fraud.    The defendants were indicted, as noted above, for conspiring to defraud the government, tax fraud, wire fraud, and aggravated identity theft.    During the six-day trial, the Government presented as evidence letters Collier sent to Taylor containing inmates' coded PII; a letter from another inmate, found in Collier's prison cell, containing "two names with info" and offering to "work something out" for "seven more"; records showing that after the scam got underway, Taylor began making relatively large (by prison standards) deposits into Collier's prison canteen account; and the testimony of several inmates whose PII had been misappropriated in the scheme. One of the inmates, Kevin Bartley, testified that Collier asked him about filing a fraudulent tax return using his PII and "explain[ed] the process" of filing a false return to him.

Collier moved for judgment of acquittal at the close of the prosecution's case and again at the close of the evidence, both times on the ground there was insufficient evidence tying him to the scam.    The district court denied both motions.

## ANALYSIS

### General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised [o]n direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that

it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well-established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255. *Nyhuis*, 211 F.3d at 1343 (quotation marks omitted). Broad discretion is afforded a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) (observing that "identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Issues which could have been raised on direct appeal generally are not actionable through a § 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is

"'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error—that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must

demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."    *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375

(11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger because "[e]xperience is due some respect." *Id.* at 1316 n.18.

To establish prejudice, a defendant must show that but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant

a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687).

To establish ineffective assistance, it is critical that a defendant provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, it is well-established that counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Hollis v. United States,* 958 F.3d 1120, 1124 (11th Cir. 2020); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir.

2008)).    This is true regardless of whether the issue is a trial or sentencing issue.

*See, e.g.*, *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure

to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore*

*v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for

failing to make a meritless objection to an obstruction enhancement); *Brownlee v.*

*Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing

to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th

Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by

prosecutor or accurate statements by prosecutor about effect of potential sentence);

*Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for

failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d

1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which

he reasonably believes to be of questionable merit); *United States v. Winfield*, 960

F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to

preserve or argue meritless issue).

    Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."    *Chandler*, 218 F.3d at 1313.    This is because

the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law, it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing. As will be demonstrated in the

discussion below, Collier has not met the high burden of showing counsel was constitutionally ineffective under *Strickland* and its progeny.

Collier's Claims

1. Motion to Quash

Collier first claims trial counsel was ineffective because she did not file a "pre-trial motion to quash testimonial evidence derived from unreasonable delay, oppressive and abusive use of grand jury subpoena" to obtain handwriting exemplars from codefendant Hall, who was not named as a defendant in the original indictment (ECF No. 350 at 14).    Specifically, Collier contends Hall's indictment came about as a result of interviews with IRS agents after the grand jury returned the original indictment.    He says Hall was compelled to provide a handwriting sample, after which she was interrogated by Special Agents who failed to advise of her *Miranda* rights and employed unspecified "oppressive and coercive tactics" (*id.*). According to Hall, the Special Agents' tactics resulted in Hall providing information about the mail fraud scheme, including the fact that Taylor received correspondence from Collier containing coded PII (which Taylor taught Hall to decode) (*id.* at 14–15).    Information Hall provided was used to support the superseding indictment and as evidence at trial.

As best the undersigned can discern, Collier contends trial counsel was ineffective in failing to move to suppress evidence obtained in connection with the second grand jury proceeding on the bases that (1) the Special Agents exceeded the scope of the grand jury subpoena issued to Hall in interviewing her; (2) the Government did not provide an affidavit in connection with issuance of the subpoena, explaining the reason the grand jury was meeting beyond its eighteen-month term or the reason the Government was requesting a handwriting exemplar to compare to evidence that had been in its possession for eighteen months; and (3) the Government failed "to file a pre-issuance motion attaching said Affidavit and requesting court intervention to assure the Special Agents do not exceed the scope and obtain testimonial evidence solely for use in criminal prosecution and assure the Affidavit supports the showing of good cause" (ECF No. 350 at 15).   He also appears to fault counsel for not moving to quash the subpoena issued to Hall and the superseding indictment, evidently on the same three bases (*id*.).

With respect to the allegation the Special Agents exceeded the scope of the subpoena in interviewing Hall, Collier has provided no authority, and the court is aware of none, that the Special Agents' actions in that regard were improper, much less unlawful.   To the contrary, "it is not uncommon for prosecutors to use the

occasion of the witness' grand jury appearance to conduct a preliminary interview."

3 Crim. Proc. § 8.8(g) (4th ed.).   "The prosecutor may not . . . have the grand jury

subpoena issued as a ploy to secure the attendance of a witness at the prosecutor's

office" or "use the subpoena authority to force a witness to submit to an office

interview."   *Id.*   There is no indication, or even allegation, in this case, however,

that the prosecutor subpoenaed Hall to provide grand jury testimony for the purpose

of forcing her to the prosecutor's office or to submit to an office interview.   Rather,

it appears from Collier's allegations that Hall was subpoenaed to testify before the

grand jury and that, after she testified, and presumably because of her testimony,

agents asked for an interview and handwriting exemplar and Hall agreed.

Collier's argument regarding the grand jury meeting beyond its term is

similarly unavailing.   Federal Rule of Criminal Procedure 6(g) provides that a

grand jury "may serve more than 18 months only if the court, having determined that

an extension is in the public interest, extends the grand jury's service."   Fed. R.

Crim. P. 6(g).   Except as otherwise provided by statute, the extension may be no

longer than six months.   *Id.*   As the Government notes, and the undersigned is

aware, grand juries in this district typically served twelve-month terms at the time

Collier was indicted, although some grand jury terms were extended in a manner

consistent with Rule 6.    Collier has pointed to no evidence showing that the grand jury that returned the superseding indictment against him served more than twelve months—much less more than eighteen months.    Indeed, the original and superseding indictments were returned within an eight-month period (*see* ECF Nos. 1 and 48), and Collier has not shown the date the grand jury was empaneled or that it met before or after issuing the indictments against him.

Collier thus has shown no basis for a motion to suppress evidence derived from the grand jury proceeding.    Counsel therefore cannot be found ineffective for failing to file such a motion.    *See, e.g., Hollis,* 958 F.3d at 1124; *Denson*, 804 F.3d at 1339.

### 2. Ambiguous Jury Verdict

Collier's second claim is difficult to comprehend.    He contends trial counsel was constitutionally ineffective because she "failed to object to presentation and submission of uncharged mail fraud conspiracy theory or timely request a defense theory instruction" (ECF No. 350 at 16).    He complains the superseding indictment was based on Hall's "extra-judicial statements" about an "uncharged non-related mail fraud conspiracy and involuntary confession implicating co-defendant Taylor" (*id*. at 17).    He asserts counsel should have timely proposed a special instruction in

response to a question from the jury regarding whether a finding of mail fraud necessitated a guilty verdict on the wire fraud charge (*id.* at 17).   Because she did not propose such an instruction, Collier maintains, the jury's verdict was ambiguous.

Before returning its verdict, the jury submitted two questions to the judge. The first question concerned whether a person could be convicted of wire fraud under certain specified circumstances (ECF No. 146).[10]   Counsel for all parties— the Government, Collier, and Taylor—concurred after discussion that the appropriate response was to send the jurors a written message instructing them to refer to pages 17 and 18 of the instructions, where the elements of wire fraud were set out (ECF No. 253 at 99–105).   The jury's second question concerned the meaning of the term "third party," which appeared in the jury instructions (ECF No. 147.)   As before, counsel agreed the question could not be answered and the proper response was to refer the jurors to the instructions (ECF No. 253 at 107–10).

Collier says based on the jury's questions, counsel should have proposed a "defense theory instruction."   He does not indicate the nature of such instruction, however, or the manner in which it would have changed the outcome of the

---

[10] The jury's questions were not read into the record, and both were filed under seal.   Therefore, neither question is repeated verbatim herein.

Case Nos.: 5:13cr13/MW/EMT; 5:18cv63/MW/EMT

proceedings.    And he has not identified any manner in which the jury's questions rendered the verdict ambiguous.    His claim thus fails.

### 3. Motion to Dismiss Indictment

Collier also argues trial counsel was constitutionally ineffective because she did not move to dismiss the indictment pursuant to Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3).    According to Collier, the indictment did not charge an actionable offense because it did not contain a reference to two subsections of the Internal Revenue Code ("Code"), 26 U.S.C. §§ 6103(a)(3) and (k)(10). Collier is incorrect.

Subsection 6103(a) of the Code governs the confidentiality of tax returns and provides for exceptions that authorize disclosure; subsection (k)(10) governs disclosure by the Secretary of the Treasury of certain returns and return information to certain federal and state or contractor-run prison officials.    Contrary to Collier's assertion, it was not necessary to cite either subsection to invoke the court's jurisdiction or state an actionable offense because neither section sets forth a substantive offense and the indictment identified the statutes setting forth the substantive offenses with which Collier was charged—18 U.S.C. §§ 2, 287, 1028A(a)(1), and 1343 (ECF No. 48).    Again, counsel cannot be found

constitutionally ineffective for failing to file a meritless motion.    *See, e.g., Hollis,* 958 F.3d at 1124; *Denson*, 804 F.3d at 1339.

### 4.  Failure to Argue Evidentiary Error (1)[11]

Collier appears to contend that appellate counsel was ineffective for not challenging the validity of the indictment on the basis that it stemmed from illegally obtained evidence (ECF No. 350 at 19–21; ECF No. 358 at 8–11).    In particular, Collier maintains IRS Special Agents caused the Florida Department of Corrections ("FDOC") to violate the separation of powers doctrine when they ordered the FDOC to search his property.    He asserts there is no proof the searches were conducted in compliance with the Florida Administrative Code and 26 U.S.C. §§ 6103(a)(3) and (k)(10) and complains the Government sought to use the items to incriminate him when his personal effects should have been free from "subpoena, warrant or equivalent process" under *Boyd v. United States*, 116 U.S. 616 (1886).    He also contends it was improper for the Government to use comparisons of handwriting exemplars from a 2006 tax levy he was challenging because the unrelated tax levy was not proper Rule 403 evidence (ECF No. 358 at 10).

---

[11]  Both of Collier's claims about the performance of appellate counsel relate to counsel's decision not to appeal evidentiary issues or rulings.  The undersigned has not combined the two sections to maintain the numerical sequence of Collier's motion and reduce confusion on review.

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). However, counsel is not required to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, determines it best not to do so. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000) (noting the Court previously "held that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"); *Knowles v. Mirzayance*, 556 U.S. 111, 126–27 (2009); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991). It is possible to bring a *Strickland* claim based on counsel's failure to raise a particular issue, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. *Smith*, 528 U.S. at 288 (*citing Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (*citing Smith*). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."

*Barnes,* 463 U.S. at 751–52.   In fact, this is the "hallmark of effective appellate advocacy."   *Smith v. Murray*, 477 U.S. 527, 536 (1986).   The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that counsel's performance, which must be judged in its entirety, was effective.   *Id.*; *Heath*, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); *Reutter v. Sec'y for Dept. of Corr.*, 232 F. App'x 914, 917 (11th Cir. 2007) (*citing Heath*).

To prevail on an ineffective assistance of appellate counsel ("IAAC") claim, a defendant must show (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance, he would have prevailed on appeal.   *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008); *see Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that IAAC claims are governed by the same standards applied to trial counsel under *Strickland*).   Counsel plainly is not ineffective for failing to raise a meritless issue on appeal.   *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

This case presents the unusual circumstance in which a defendant whose attorney **was** successful on appeal believes there were additional or different issues counsel should have raised that would have been **more** successful.   However, Collier has not specified arguments counsel should have made; instead, he merely claims the district court's decisions on various issues were wrong.   Furthermore, reading between the lines of the appellate opinion, the Eleventh Circuit clearly saw the strength in the Government's case.   For instance, it referred to the district court's denial of Collier's motion for judgment of acquittal as "unsurprising" and the evidence against Taylor as "even stronger" (ECF No. 288 at 4).   Collier has not shown that any of the challenges he claims counsel should have made would have been successful; hence, he has not demonstrated counsel's performance was constitutionally deficient.   *Shere*, 537 F.3d at 1310.

   5.  Appellate Counsel—Failure to Argue Evidentiary Error (2)

Collier further asserts appellate counsel performed ineffectively in failing to appeal the district court's decisions overruling objections to the admission of evidence, including documents and oral statements, he contends were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).   According to Collier, Special Agents Margaret Weiss and Christopher Pekerol testified they did not read

any inmates their *Miranda* rights prior to interviewing them. Collier contends the district court erred in overruling counsel's objections to the inmates' testimony on that basis and that, as a result, his conviction was based on evidence obtained in violation of *Miranda* (ECF No. 350 at 22).[12]    He asserts counsel was "ineffective for failing to raise this evidentiary error that went directly to the verdict of guilt" (*id*.).

Collier's claim based on the lack of *Miranda* warnings fails because Collier has identified no circumstances necessitating a reading of *Miranda* rights and the undersigned has discerned none.   The trial testimony reveals that Special Agents Pekerol and Weiss interviewed inmates at a facility where Collier was housed to determine whether the inmates were accomplices to or victims of the tax fraud scheme (ECF No. 258 at 103–21; ECF No. 248 at 3–204; ECF No. 249 at 6–17; ECF No. 252 at 158–254).   Pekerol said he expected to find inmates who were suspects but, instead, found inmates who were victims of the fraud (ECF No. 252 at 193). Weiss testified they did not *Mirandize* the inmates before beginning the interviews (ECF No. 248 at 123).

---

[12] In *Miranda*, 384 U.S. at 436, the Supreme Court held that statements obtained from defendants during custodial interrogations are inadmissible in the absence of full warning of constitutional rights.

There is no indication the interviews at issue were custodial in nature, as required to invoke *Miranda*.   *See Howes v. Fields*, 565 U.S. 499, 512 (2012) ("[S]tandard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation.   Thus, service of a term of imprisonment, without more, is not enough to constitute *Miranda* custody.").   Rather, the evidence suggests the Special Agents were trying to determine the scope of the tax fraud scheme, not detain inmates whom they had reason to believe had engaged in criminal activity for purposes of interrogating and charging them at that time.   In fact, Pekerol said some inmates refused to talk to the investigators (ECF No. 252 at 243), which suggests the interviews were voluntary. Even if *Miranda* warnings had been required, Collier has not shown the evidence would have been inadmissible in the absence of such warnings.   *See, e.g., United States v. Fredericks*, 586 F.2d 470, 480–81 (5th Cir. 1978) (codefendant may not seek "to suppress evidence incriminating him that was obtained from a co-participant in crime without proper compliance with the procedural requirements of *Miranda* or otherwise in violation of that party's Fifth or Sixth Amendment rights"); *see also United States v. Merkt*, 764 F.2d 266, 274 (5th Cir. 1985) ("The violation

of a witness's due process rights by failing to give the witness *Miranda* warnings is not per se a violation of the rights of a defendant against whom that witness's statement is adduced.   Neither *Miranda* nor any case in the line of decisions it generated has ever so held.").

### 6.  Jury Instruction

Collier asserts trial counsel was constitutionally ineffective in failing to "make a timely written proposal of a special non-criminal conduct jury instruction in light of Fifth Amendment and Ex Post Facto Principles" (ECF No. 350 at 23).    He claims he told his attorney the indictment did not allege a crime for the time period set forth therein because the Government was not authorized to "seek federal punishment over prison tax fraud schemes prior to the year 2013" (*id.*).   This claim, even as further explained in Collier's memorandum, borders on the nonsensical, and counsel was not constitutionally ineffective for failing to request a jury instruction such as Collier describes.    *Hollis*, 958 F.3d at 1124; *Winfield*, 960 F.2d at 974.

### 7.  Speedy Trial

Collier contends his trial attorney was ineffective for not moving to dismiss the indictment with prejudice because the court's *sua sponte* rescheduling of the trial from October 21, 2013, to January 27, 2014, constituted a violation of the Speedy

Trial Act.    The record reflects Collier first appeared before Magistrate Judge Bodiford on April 24, 2013 (ECF No. 22, 23).    A jury trial was scheduled for June 24, 2013 (ECF No. 23).    Counsel states in her affidavit that she and Collier discussed the matter before determining it was in Collier's best interest to waive his right to a speedy trial (ECF No. 361-1 at 3).    Based on his discussion with counsel, Collier signed a speedy trial waiver on June 4, 2013 (ECF No. 32).    The waiver did not contain a time limitation.    After Collier signed the waiver, there was no basis upon which counsel could make a speedy trial objection.    *See United States v. Twitty*, 107 F.3d 1482, 1487, 1487–90 (11th Cir. 1997) (considering a claimed Speedy Trial violation brought by a defendant who had waived his right to a speedy trial only through a date certain, as opposed to codefendants who executed "indefinite speedy trial waivers").    Furthermore, the specific extension of time of which Collier complains was the result of a codefendant's motion to continue, to which both Collier and the Government consented (ECF No. 44).    There thus was no basis for dismissing the indictment on speedy trial grounds, and counsel cannot be constitutionally ineffective for not raising the frivolous argument.    *Brownlee*, 306 F.3d at 1066.

　　　　8.    <u>Victim Impact Testimony</u>

Collier asserts trial counsel was ineffective in failing to object to "victim impact testimony" at trial and the original sentencing.    He claims the testimony should have been excluded because it was not relevant to his intent to defraud and did not support the offense level enhancements under U.S.S.G. § 2B1.1.    Collier does not specifically identify the testimony to which he objects, and the PSR does not support his suggestion that "victim impact testimony" was the basis for the § 2B1.1 calculations.    Collier also has not demonstrated prejudice resulting from the alleged victim impact testimony.    His bare, conclusory allegations in that regard fall far short of demonstrating he is entitled to relief.    *Boyd,* 697 F.3d at 1333–34; *Garcia*, 456 F. App'x at 807.

9.   Mitigation Evidence

Collier's final ground for relief is that trial counsel failed to investigate and argue mitigating factors or present mitigating evidence at the resentencing hearing (*see* ECF No. 350 at 29–32).    He asserts counsel should have fully investigated his history of mental illness, sought a competency determination, and challenged his competency at the time of the offense conduct (ECF No. 350 at 29).    He claims counsel should have argued he did not understand the nature and scope of the

criminal enterprise, did not know the PII would be used unlawfully, and was "far less culpable than those who orchestrated the tax scheme" (ECF No. 350 at 30).

At resentencing, counsel brought Collier's "history of mental health issues" to the court's attention, specifically noting that in the year 2000, he was adjudicated incompetent by a state court and competency was never restored (ECF No. 338 at 6–7). Counsel assured the court, however, that she was not suggesting Collier was not competent to proceed at that point and acknowledged the parties were not there "to adjudicate the merits of whether or not there should have been a competency evaluation in prior state court cases or in this case in particular" (*id.* at 7). Counsel further assured the court that although she was "not a trained mental health professional," she did not have any concerns about her client's competency to proceed (*id.* at 8).[13] The court nevertheless inquired into Collier's mental state, and Collier responded by stating he was "back" but that "back then [he did not] know what happened"; he also stated his complaints about competency related to prior proceedings and not the resentencing (*id.* at 9). The court found Collier's behavior and demeanor appropriate (*id.* at 13–15). Hence, there is no indication whatsoever

---

[13] Counsel now states in her affidavit attached to the Government's response that she had "no concerns that [Collier] was not competent to proceed" at any point during her representation (ECF No. 361-1 at 4). She further notes Collier "meaningfully participated in his defense and demonstrated an advanced understanding of the proceedings and strategies employed" (*id.*).

that counsel had any arguably valid reason for challenging Collier's competency at the re-sentencing hearing.    And although Collier's suggestion that he did not know the PII would be used unlawfully is disingenuous, at best, counsel argued he was entitled to a minor role reduction, and he received one.

In addition to complaining about counsel's failure to raise the issue of competency, Collier suggests counsel did nothing to prepare for the resentencing hearing and made no arguments on his behalf.    Collier's argument in that regard is belied by the record.    Indeed, the record shows the court sustained objections by Collier's counsel, resulting in a 4-level reduction in his offense level (ECF No. 338 at 54).    Moreover, the 84-month sentence ultimately imposed was an 80-month reduction from his original sentence of 164 months.    And although Collier references "several witnesses [who were] prepared to testify as to his character and mental state at time of alleged crime," he neither identifies the witnesses nor explains what their testimony would have been.

## CONCLUSION

An evidentiary hearing is not necessary for this court to resolve Collier's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.    For the

reasons set forth above, the court finds Collier has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore, his motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The Motion Under 28 U.S.C. § 2255 (ECF No. 350) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of June 2020.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.